IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

STATE AUTOMOBILE MUTUAL
INSURANCE COMPANY,

        Plaintiff,

v.

ALLEGHENY MEDICAL SERVICES d/b/a
RESPONSIBLE PAIN AND AESTHETIC
MANAGEMENT PLLC, J. JORGE A. GORDINHO
and DEBORAH DUNKLEY,

        Defendants.

Civil Action No.: 5:18-cv-01421
The Honorable Irene C. Berger

## STATE AUTOMOBILE MUTUAL INSURANCE COMPANY'S
## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff State Automobile Mutual Insurance Company ("State Auto"), by counsel, states as follows for its *Complaint for Declaratory Relief* ("Complaint"):

1. State Auto seeks a declaration by this Court that it has no obligation to indemnify Allegheny Medical Services d/b/a Responsible Pain and Aesthetic Management PLLC ("Responsible Pain"), pursuant to any provision of Policy Number BOP 258710 (the "Policy") for claims arising out of the allegations made by Deborah Dunkley ("Ms. Dunkley") in *Dunkley v. Lowe*, et al., Civil Action No. 15-C-1000, in the Circuit Court of Raleigh County, West Virginia (the "Civil Action").

2. Furthermore, State Auto seeks a declaration by this Court that it has no obligation to indemnify J. Jorge A. Gordinho ("Mr. Gordinho"), pursuant to any provision of the Policy, for claims arising out of the allegations made by Ms. Dunkley in the Civil Action.

## PARTIES

3. State Auto is an Ohio corporation with its principal place of business at 518 East Broad Street, Columbus, Ohio 43215, and is authorized to conduct business in the state of West Virginia.

4. Responsible Pain was a West Virginia professional limited liability company with its principal place of business in Beckley, Raleigh County, West Virginia.

5. Mr. Gordinho is, upon information and belief, a West Virginia resident who is currently incarcerated at FMC Butner, Old N. Carolina Hwy. 75, Butner, North Carolina.

6. Ms. Dunkley is, upon information and belief, a West Virginia resident residing at 106 Dunkley Street, Stanaford, West Virginia.

## JURISDICTION AND VENUE

7. This action is instituted pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure. This action is ripe for adjudication because Responsible Pain and Mr. Gordinho seek indemnity from State Auto for claims asserted against them by Ms. Dunkley in the Civil Action.

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the matter in controversy involves a dispute between citizens of different states and, based upon the potential pecuniary impact of the claims made by Responsible Pain and Mr. Gordinho under the Policy, the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

9. An actual controversy exists between State Auto and both Responsible Pain and Mr. Gordinho within the meaning of 28 U.S.C. § 2201. This Court, therefore, is vested with the power to declare and adjudicate the rights and responsibilities of the parties in this action with reference to the issues addressed by this Complaint.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim or claims which are the subject of this dispute occurred within this district. More specifically, Responsible Pain operated in, and the events giving rise to the allegations made by Ms. Dunkley against Mr. Gordinho and Responsible Pain occurred in, Raleigh County, West Virginia, which lies fully within this district.

## THE POLICY

11. State Auto issued the Policy, which is a "Businessowners Policy", to Responsible Pain, such Policy being effective from December 17, 2010 to December 17, 2016. A certified and complete copy of the pertinent Policy, as well as all other iterations thereof, is attached hereto as **Exhibit A**, and its terms are incorporated as if set forth herein.

12. The Policy states, in pertinent part, as follows:

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement.**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

\* \* \*

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "covered territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph **1** of Section **II** – Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

   (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

   (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

   This insurance does not apply to:

   a. **Expected Or Intended Injury**

   "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

   \* \* \*

A. The following is added to Paragraph 2. Exclusions of **Section I – Coverage A.** Bodily Injury and Property Damage Liability:

   This insurance does not apply to "bodily injury" or "property damage" caused by or rendering or failure to render any professional service. This includes, but is not limited to:

   \* \* \*

   (6) Medical, surgical, dental, x-ray or nursing treatment, advice or instruction[.]

   \* \* \*

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

17. "Property damage" means:
   a. Physical injury to tangible property, including all resulting use of that property . . .

For purposes of this insurance, electronic data is not tangible property.

(Ex. A, p. 118–19; 129; 131–32; 140–41).

## THE UNDERLYING FACTUAL BACKGROUND

13. The coverage issue giving rise to this declaratory judgment action arises out of the Civil Action and the facts giving rise thereto. *See Complaint*, attached hereto as **Exhibit B**. Specifically, Responsible Pain and Mr. Gordinho are seeking indemnification from State Auto for any judgment for, or settlement of, the claims asserted against them by Ms. Dunkley in the Civil Action, up to the limits afforded to them under the terms and conditions of the Policy.

14. Ms. Dunkley was a Responsible Pain patient in Beckley, West Virginia, under the care of Mr. Gordinho. Ex. B, ¶ 11. In addition to being under Dr. Gordinho's care, Ms. Dunkley was under the care of James E. Lowe ("Mr. Lowe"), who acted as an assistant to Mr. Gordinho and who was an employee of Responsible Pain. *Id.*

15. Ms. Dunkley alleges that, during the course of her treatment at Responsible Pain, Mr. Lowe coerced Ms. Dunkley into engaging in a sexual relationship against her will. *Id.* at ¶ 12. Mr. Lowe allegedly coerced Ms. Dunkley by advising her that she was under suspicion by the United States Drug Enforcement Agency ("DEA"), which had an undercover agent at Responsible Pain, for misusing her pain medication; however, in exchange for her engaging in a sexual relationship with Mr. Lowe, Mr. Lowe would "protect" Ms. Dunkley from the DEA. *Id.* at ¶¶ 13–15. Mr. Lowe further stated that should Ms. Dunkley not engage in the sexual relationship, Mr. Lowe would not "protect" her from the

DEA. *Id.* at ¶ 15. Ms. Dunkley asserts that there was no such DEA agent on Responsible Pain's premises. *Id.* at ¶¶ 13–14.

16. Ms. Dunkley states that she felt coerced into this sexual relationship, incidences of which occurred on several occasions at Responsible Pain and other locations, because she required her pain medication to function in her everyday life. Ex. B, ¶ 15.

17. As a result of the foregoing events, Ms. Dunkley filed the Civil Action, seeking damages from Responsible Pain, Mr. Gordinho, Mr. Lowe and Allegheny Medical Services, P.C. ("Allegheny"). In the Civil Action, Ms. Dunkley makes the following claims: (1) Civil Battery against Mr. Lowe; (2) Intentional Infliction of Emotional Distress against Mr. Lowe; and, (3) Negligence – negligent hiring, retention and supervision of Mr. Lowe by Allegheny, Responsible Pain, Mr. Gordinho, and others. *Id.* at ¶¶ 7–38. Ms. Dunkley seeks compensatory and punitive damages in an unspecified amount, which could potentially exceed the Policy limits of $1,000,000.00.[1]

18. Discovery in the Civil Action revealed additional details regarding indemnity under the Policy. Specifically, Ms. Dunkley described, in detail, intentional sexual assault during her deposition:

> He proceeded to – he was like ripping at my breasts and he was – I can't say kissing because it was more like he was licking my whole face. It's like his tongue was huge. And he smelled – his face was sticky like he had just been down on another woman and she had an odor and he was gagging me. And he was pushing me and he was pulling at my breasts. Somehow he pushed me around the corner and . . . He penetrated me. He got my pants down and he – yes. And I was trying to push him off because he was gagging me. He stunk and his spit was everywhere all over my face.

*See Transcript of the Deposition of Deborah Dunkley*, attached hereto as **Exhibit C**, p. 63:16–64:9.

---

[1] This Court has already resolved coverage issues pertaining to James E. Lowe in *State Automobile Mutual Insurance Company v. James E. Lowe and Deborah Dunkley*, Civil Action No. 5:16-cv-04238. In that matter, this Court determined that Mr. Lowe was not entitled to defense or indemnity for the claims arising out of Ms. Dunkley's Civil Action because: (1) Mr. Lowe did not qualify as an insured under the Policy; (2) "No accidental injury is alleged"; and, (3) "the claims against him are for intentional acts which are excluded by the policy."

19. Ms. Dunkley also affirmed that, absent her tolerating the sexual assault, Mr. Lowe threatened her medication by claiming that an United States Drug Enforcement Agency operative would confiscate her medication. *Id.* at p. 56:14–19. She testified that Mr. Lowe was "protecting" her because Mr. Lowe "knew how much I needed my medication." *Id.* at 57:1–2. She further testified that Mr. Lowe utilized his position as her provider to exercise control over her, testifying that Mr. Lowe's position was "[i]f you want to continue getting your medicine, you will do what I tell you to do." *Id.* at 154:7–8. Among these demands were she never "miss a phone call" from him and that she participate in group sexual activities with him. *Id.* at p. 71:14–15; 72:12–13. Indeed, Ms. Dunkley testified that she "was not willing to let anybody have that kind of control over me" which prompted her to abandon utilizing the services of pain clinics. Ex. C, p. 126:7–8.

20. Mr. Lowe also offered testimony in the Civil Action, affirming that he and Ms. Dunkley had "sex, both oral and intercourse." *See Transcript of the Deposition of James E. Lowe*, attached hereto as **Exhibit D**, p. 26:21. Mr. Lowe acknowledged that his sexual interaction with Ms. Dunkley is "not ethically permitted" as a medical professional. *Id.* at p. 28:1. Mr. Lowe's testimony demonstrates that the sexual contact was intentional.

## COUNT I
**(Declaration of Rights and Responsibilities of Parties – Dunkley v. Responsible Pain)**

21. State Auto hereby incorporates paragraphs 1–17 of this Complaint as if fully set forth herein.

22. The Policy does not provide indemnity coverage to Responsible Pain for any of the claims made by Ms. Dunkley in the Civil Action, as set forth in paragraphs 13–17, *supra*.

23. Coverage does not exist under the Policy for three (3) reasons: (1) the acts alleged in the Civil Action do not fall under the Policy's definition of "occurrence"; (2) coverage is excluded under the "Expected or Intended Injury" provision of the policy; and, (3) the claims alleged were "caused" by the provision of professional medical services.

24. First, coverage does not exist pursuant to the Policy because the acts alleged in the Civil Action do not constitute an "occurrence" under the Policy. An "occurrence" is defined as "an **accident**, including continuous or repeated exposure to substantially the same general harmful conditions." Ex. A, p. 131 (emphasis added). However, the acts alleged in the Civil Action are alleged to be, and are, intentional in nature. *See* Ex. B, ¶¶ 12–15. Therefore, coverage does not exist under the Policy.

25. Second, coverage does not exist under the Policy for claims arising out of an injury which was "expected or intended" by the insured. Ex. A, p. 119. The injuries for which Ms. Dunkley seeks remedy in the Civil Action are injuries intended by the perpetrator, Mr. Lowe, when he allegedly coerced Ms. Dunkley into a sexual relationship. *See generally* Ex. B.

26. For purposes of determining coverage for Responsible Pain, the question centers on the intentions of the individual engaging in the conduct giving rise to the claims. *See, e.g., Smith v. Animal Urgent Care, Inc.*, 208 W. Va. 664, 542 S.E. 2d 827 (2000) (finding no coverage for business due to sexual misconduct of business' doctor for lack of occurrence, expected or intended injury and lack of bodily injury). The conduct and harm alleged by Ms. Dunkley falls squarely within the purview of the exclusion for injuries "expected or intended" by Mr. Lowe and, therefore, Responsible Pain. In turn, coverage does not exist under the Policy.

27. Third, coverage does not exist under the Policy when the alleged injuries were "caused by or rendering or failure to render any professional service" including "[m]edical, surgical, dental, x-ray or nursing treatment, advice or instruction." Ex. A, p. 140. Exclusion under the Policy pursuant to this provision is applicable even if the conduct alleged by Ms. Dunkley is negligence in connection with supervision, hiring, employment, training or monitoring by an insured if the alleged injuries involved the rendering or failure to render any professional medical service. *Id.* Here, the injuries alleged by Ms. Dunkley arise out of the provision of professional medical services—including, but not limited to, Mr.

Lowe's alleged efforts to trade medical services for a sexual relationship *See* Ex. B. Therefore, there is no coverage under the Policy for all claims arising out of the provision of professional medical services.

## COUNT II
### (Declaration of Rights and Responsibilities of Parties – Dunkley v. Gordinho)

28. State Auto hereby incorporates paragraphs 1–24 of this Complaint as if fully set forth herein.

29. The Policy does not provide indemnity coverage to Mr. Gordinho for any of the claims made by Ms. Dunkley in the Civil Action, as set forth in paragraphs 13–17, *supra*.

30. Coverage does not exist under the Policy for three (3) reasons: (1) the acts alleged in the Civil Action do not fall under the Policy's definition of "occurrence"; (2) coverage is excluded under the "Expected or Intended Injury" provision of the policy; and, (3) the claims alleged were "caused" by the provision of professional medical services.

31. First, coverage does not exist pursuant to the Policy because the acts alleged in the Civil Action do not constitute an "occurrence" under the Policy. An "occurrence" is defined as "an **accident**, including continuous or repeated exposure to substantially the same general harmful conditions." Ex. A, p. 131 (emphasis added). However, the acts alleged in the Civil Action are alleged to be, and are, intentional in nature. *See* Ex. B, ¶¶ 12–15. Therefore, coverage does not exist under the Policy.

32. Second, coverage does not exist under the Policy for claims arising out of an injury which was "expected or intended" by the insured. Ex. A, p. 119. The injuries for which Ms. Dunkley seeks remedy in the Civil Action are injuries intended by the perpetrator, Mr. Lowe, when he allegedly coerced Ms. Dunkley into a sexual relationship. *See generally* Ex. B.

33. For purposes of determining coverage for Mr. Gordinho, the question centers on the intentions of the individual engaging in the conduct giving rise to the claims. *See, e.g., Smith*, 208 W. Va. at 664, 542 S.E. 2d at 827 (finding no coverage for business due to sexual misconduct of business' doctor for lack of occurrence, expected or intended injury and lack of bodily injury). The conduct and

4852-9027-2121.1  9

harm alleged by Ms. Dunkley falls squarely within the purview of the exclusion for injuries "expected or intended" by Mr. Lowe and, therefore, Mr. Gordinho. In turn, coverage does not exist under the Policy.

34. Third, coverage does not exist under the Policy when the alleged injuries were "caused by or rendering or failure to render any professional service" including "[m]edical, surgical, dental, x-ray or nursing treatment, advice or instruction." Ex. A, p. 140. Exclusion under the Policy pursuant to this provision is applicable even if the conduct alleged by Ms. Dunkley is negligence in connection with supervision, hiring, employment, training or monitoring by an insured if the alleged injuries involved the rendering or failure to render any professional medical service. *Id.* Here, the injuries alleged by Ms. Dunkley arise out of the provision of professional medical services—including, but not limited to, Mr. Lowe's alleged efforts to trade medical services for a sexual relationship *See* Ex. B. Therefore, there is no coverage under the Policy for all claims arising out of the provision of professional medical services.

## PRAYER FOR RELIEF

**WHEREFORE**, State Auto respectfully prays for the following relief:

A. that this Court issue an Order declaring that the Policy does not provide indemnity coverage for claims which arise from events not meeting the Policy definition of an "occurrence" and that the events giving rise to the Civil Actions, as asserted by Ms. Dunkley, do not meet the Policy definition of an "occurrence"; and/or, in the alternative,

B. that this Court issue an Order declaring that the Policy does not provide indemnity coverage for claims which arise from injuries "expected or intended" by the insured, and that the events giving rise to the Civil Action were "expected or intended" by Mr. Gordinho and Responsible Pain as against the Ms. Dunkley under clear West Virginia law; and/or, in the alternative,

C. that this Court issue an Order declaring that the Policy does not provide coverage for claims which arise from injuries which allegedly occurred during the rendering or failure to render

professional medical services by Dr. Gordinho and Responsible Pain, and that the claims asserted by Ms. Dunkley arise out of the rendering or failure to render professional medical care; and,

        D.    that this Court grant such other legal or equitable relief as it deems appropriate, just or proper under the circumstances.

        Respectfully Submitted,

By:*/s/ Matthew A. Nelson*
    Matthew A. Nelson (WV State Bar # 9421)
    David A. Bosak (WV State Bar # 11947)
    LEWIS BRISBOIS BISGAARD & SMITH LLP
    222 Capitol Street, Fifth Floor
    Charleston, West Virginia 25301
    304.553.0166 (T) / 304.932.0265 (F)
    Matt.Nelson@lewisbrisbois.com
    Dave.Bosak@lewisbrisbois.com

    *Counsel to State Automobile Mutual Insurance Company*